## RICKETTS, et al. v. GARRETT.

1. The service of an injunction at the suit of a stranger, asserting a title to a ferry in the possession of a lessee, restraining him from interfering in

Ricketts, et al. v. Garrett.

the use of the ferry, is not such a disturbance as amounts to an eviction, and therefore will not prevent the lessor from recovering rent when the bill is dismissed.

2. Although a sheriff serving an injunction may have no authority to expel one from the possession of a ferry, or put another in, yet if he does so, the lessee may consider it a lawful expulsion if the plaintiff in the suit is invested with a paramount title to his lessor.

3. When a record is stated as an exhibit to an answer to a bill in chancery and the exemplification of the suit is given in evidence by the party making the answer, although offered only to show the fact of the suit, and an eviction by means of an injunction allowed in it, the opposite party may read the answer to prove the existence of the record.

Error to the Circuit Court of Marshall.

DEBT by Garrett, as the administrator of Edward Gunter, on a bill single made by Ricketts and others, dated 6th January, 1840, payable the 1st of July then next. The defence was failure of consideration.

At the trial, after the bill single was put before the jury, the defendants proved it was given for the rent of a Ferry on Tennessee river, known as Gunter's ferry, and then read an order of the commissioners court of Marshall county, in these terms, to wit:

"Wendesday, 22d August, 1838—August term, 1838— On the application of J. S. Boggiss and R. S. Randle for leave to run a ferry boat across the Tennessee river, from the south bank at Gunters's Landing, it is considered by the court, that said petition be granted, and the liberty given to the said Boggiss and Randle, to keep a public ferry on the river at said place, and that they be entitled to the exclusive right of the ferriage from the south bank at Gunter's Landing, and that the following rates of ferriage be established." Then follows the rates, &c. which is unnecessary to recite.

The defendants then proved that Boggiss and Randle for several months in the latter part of the year 1838, run boats across said river at said ferry. They then read a transcript of the proceedings in a certain suit in chancery in Madison county, instituted by Boggiss and Randle, against Edward Gunter, and the makers of the single bill, the foundation of

this suit, the object of which was to restrain Gunter and his lessees from using the ferry franchise. A fiat for the injunction was obtained, and that writ issued and was served on the defendants, 31st March, 1840. This bill was dismissed without prejudice, in March 1844. This was offered to show the filing of the bill claiming the ferry, and that defendants had been evicted under the injunction, but the whole proceedings were read in evidence to the jury. The answer set out a license from the county court of Jackson county to Gunter for the ferry in question.

The defendants then proved, that they were put out of possession by the sheriff, and Boggiss and Randle put into possession of said ferry, in April, 1840, under said injunction, and that Boggiss and Randle retained possession for the remainder of the year 1840, to the entire exclusion of the defendants. That so soon as they were evicted, they notified Gunter of the fact.

The plaintiff then read to the jury, an order of the commissioners' court of Marshall county, of May term, 1836, in the following terms, to wit: "Ordered by the commissioners, that the rates of the Gunter's Landing ferry, kept by Edward Gunter, be as follows;" after which are the rates which are unimportant to be recited. The plaintiff then proved that Gunter kept a ferry at the same place in 1817, and continued to keep it up from that time until the 6th January, 1840, when he leased it to the defendants, but the same witnesses proved that at two different times other persons run boats across the river at said ferry, in opposition to Gunter. That the first was about the year 1825, and the other about the year 1831, and each was continued for several months.

It was also proved, that Gunter put the defendants in possession, on the 6th January, 1840. The plaintiff proved that Gunter had possession of both banks of the river, the whole time he kept the ferry. This portion of the evidence was objected to by the defendants, but allowed by the court.

On this state of proof, the defendants asked the court to instruct the jury, that if they believed the defendants were put out of possession of said ferry as aforesaid, they must find for the defendants. This was refused, and the jury instruct-

Ricketts, et al. v. Garrett.

ed, that the plaintiff was entitled to a verdict if the evidence was believed.

The defendants excepted to the admission of the evidence objected to, as well as the refusal to charge as asked, and to the charge given.

These rulings are now assigned as error.

ROBINSON, for the plaintiff in error, insisted—

1. That a tenant, when sued for rent, may show an eviction under process, and may likewise dispute his landlord's title at least so far as to show a change in it, depriving the tenant of the use of the property. Here the transcript of the chancery cause shows such change of title. [Randolph v. Carleton, 8 Ala. R. 614; Jackson v. Rowland, 6 Wend. 666; Glenn v. Rice, 6 Watts, 44.]

2. There is no proof in the record to counteract the evidence of the title under which the defendants were evicted, or showing that Gunter ever obtained a license to establish his ferry. Such a franchise is the creature of statute. [Aik. Dig. 363, § 26; Ib. 364, § 30.] Whatever right Gunter may have had was in contravention of these statutes, and therefore illegal. The tenant may show this in defence. [13 S. & R. 133.]

3. As no right to keep a ferry can be derived except by license, the highest evidence of this is the license, and consequently the evidence objected to was improper.

4. The court cannot presume a grant from the length of time. In 1817, the country belonged to the Cherokees, and the jurisdiction of Alabama was not extended over the country. It is not shown they had any law or usage authorizing the appropriation of such a privilege by possession; and besides, here the possession was shown to be interrupted.

S. PARSONS, contra.

GOLDTHWAITE, J.—1. The principal question in this case is, whether the disturbance of the defendants in their enjoyment of the ferry, by reason of the allowance of the injunction, at the suit of Boggiss and Randle, is such a matter as will prevent the landlord from recovering rent during the

continuance of the disturbance. The ordinary principle is, that when the lessee has been evicted by a stranger, it is absolutely necessary the stranger entered not by wrong, or by a title derived from the lessee himself, but by force of a legal and an elder title. [Com. on L. & T. 543, and cases there cited.] This is usually shown by a judgment of eviction against the tenant, which is in general conclusive, if the landlord was notified by the tenant, but if otherwise the better opinion seems to be, that the proof of title has to be made as if no judgment had been had. [Cowan & Hill's Notes.] We do not well see on what grounds it can be assumed, that the allowance of an injunction is to be considered equivalent to a judgment. The one is procured upon the *ex parte* statement of the party, and no title, however good, in the landlord, would avail in many cases to prevent the allowance of this writ. The landlord is under no duty to protect his tenant against a trespass, or tortious entry, and if he is ousted by one having no title, the law leaves him to his remedy against the wrong doer. [C. on L. & T. 172.] If the suit in equity had been pursued to such results, that the injunction had been perpetuated, it is quite possible the proper analogy would give the same effect to the decree as would be given to a judgment at law; but the suit having been dismissed, the presumption arises, that the injunction was improperly sued out, and therefore the tenant cannot say, that in consequence of this proceeding, he has been evicted by a lawful title.

2. Although it may well be questioned whether the sheriff had any authority under the writ of injunction to put the defendants out, or others in, yet the effect of the entry by Boggiss and Randle, was the eviction of the defendants, and if they have shown this entry was warranted by paramount title, it is as much a defence to them as if they had been expelled by suit. We apprehend that no one is required to stand a suit when he is perfectly satisfied a recovery must be had, and although at first view it might seem a part of the duty of the tenant to suffer a suit in consequence of the allegiance he owes his landlord, yet we cannot find the rule is thus asserted, except by Mr. Bouvier in his dictionary. [Bou. L. D. tit. Eviction, 378.] But the authorities cited do not

sustain him. [1 Saund. 204, n. 2; Ib. 322, n. 2.] The landlord's possession indeed seems sufficiently protected with us, by allowing him a summary remedy against any one coming into the estate by, from, under, or by collusion with the tenant. [Dig. 251, § 5.] So that there can be no serious practical evils growing out of the recognition of the same rules as to what shall constitute the eviction of a tenant, as obtain in actions upon covenants of warranty for peaceable possession. [See Caldwell v. Kirkpatrick, 6 Ala. Rep. 60; Banks v. Whitehead, 7 Ib. 83.]

3. Having ascertained that an actual expulsion by one having paramount title, is equivalent to a lawful eviction, it is only necessary further to inquire if the title shown by the defendants, in Boggiss and Randle, is superior to that exhibited by the plaintiff. And here we may remark, that as the defendants have assumed the character of lessees, they are in no condition to assert, the lessor had no title at the commencement of their tenancy. [Com. on L. & T. 519.] Conceding however, they are permitted to show that other persons have lawfully excluded them from the possession, and that the license to Boggiss and Randle, was sufficient, if not rebutted by other proof, we think the title of the lessor is abundantly sustained by the sworn admissions of the defendants, contained in their answer to the suit, the exemplification of which they gave in evidence. It is supposed, because this was offered for the specific purpose of showing the allowance of the injunction, that the plaintiff cannot use the answer for any other purpose, although it contains an exhibit showing the regular grant of a license for this ferry to Gunter by the commissioners' court of Jackson county, which once extended over the situs of the ferry. The general rule is, that admissions of the contents of a writing, or record, are not admissible to prove its existence or contents, unless made for the purpose of the trial, but the sworn answer of a party to a bill in chancery is an exception to this rule. [Greenl. Ev. § 97.] We are unable to perceive the least error in the rulings of the court below, and its judgment is therefore affirmed.